Thank you, Your Honor. Good morning. May it please the Court, my name is Stephen Wichley. I am the attorney for Brandon Sutton, who is the petitioner and appellant in this habeas matter. I'm going to focus my brief time with you here this morning, at least my brief time on this case, on the issue of prosecutorial misconduct, which was the second of the two issues that was raised by Mr. Sutton on appeal. It's our contention that prosecutorial misconduct rising to the level of a due process violation rendered Mr. Sutton's trial fundamentally unfair. In 1935, the United States Supreme Court first condemned prosecutorial misconduct in the Berger decision, stating that while the prosecutor may strike hard blows, he or she is not free to strike foul blows or to use improper methods to obtain a conviction. Despite language in dozens of subsequent cases disapproving methods like those used in the Berger case, the fact is that courts very rarely grant relief on claims of prosecutorial misconduct. And frankly, savvy prosecutors know this, and they're able to make arguments like the one that was made in Mr. Sutton's case. Well, I thought what was interesting, though, and I thought not a bad tactic, was that the prosecutor himself noted, nothing I say is evidence. Disregard what I say completely. Put that in. And that the lawyers themselves talked about you can't decide this case based on sympathy and all of the type of things that you're alleging. So when you say that it was unfair, the prosecutor himself reiterated those instructions, which the jurors would have heard, saying, don't listen to anything I have to say. What do we make of that? Well, what we make of that is, again, that this prosecutor is savvy. He says, on the one hand, just go home and thank God that you're not the does, the name of the victim family in this case, and take those that are close to you and hold them close to you and thank God this didn't happen to you. And, oh, by the way, don't make a decision based on sympathy or prejudice. I think at that point, the qualification that's made by the prosecutor is largely meaningless and is, in fact, designed to give an appellate prosecutor an argument to make. Well, but if it was so bad, what was, was trial counsel applauded the plant? Counsel's failure to object certainly doesn't mean that the comments were okay. I know that was an argument that was made by the attorney general. What it likely means, frankly, is that counsel wasn't doing his job. And this falls on me, to be perfectly honest. I was post-conviction counsel in state court. I should have framed this issue not only as misconduct but also as ineffective assistance of counsel. I didn't do so, so since I didn't exhaust the court. Oh, fall on your sword. Woulda, coulda, shoulda. Well, you know, unfortunately, Mr. Sutton doesn't have the right to effective assistance of counsel on post-conviction relief. But I'll be frank. I should have framed this both as IAC and as prosecutorial misconduct because it was, frankly, the behavior of a potted plant not to object to the misconduct that occurred. Sometimes, at first what you're faced with then is somebody will say, well, it might have been a tactic not to emphasize the remarks by objecting and so on. I mean, that kind of language we do see. Yeah, I have heard that argument made. It's difficult for me to conceive of a situation where a prosecutor makes an argument like the one made in this case and there's a legitimate tactical reason to not object because you don't want to emphasize the comments. I think at that point you need to object. You need to ask for a curative instruction. You need to ask for a mistrial and then take it from there on direct appeal. Obviously, none of that happened in this case. So we're under ACPA here, and so we're looking for clearly established Supreme Court precedent. And the case on prosecutorial discretion is Darden, which where the prosecutor there said the defendant is an animal, he deserves death, and very outrageous comments. The Supreme Court notes they're outrageous but says that's not enough for relief. So here there's nothing. It seems to me there's nothing much close to that type of conduct, which the Supreme Court said anyway was insufficient for a denial of due process. So how under ACPA can we say that the state court got it wrong, that it was an unreasonable application of Supreme Court precedent? Well, I think that, you know, the general principle that prosecutorial misconducts can rise to the level of a due process violation and violate the right to a fair trial is one that has to be applied to the specific facts of each case. You know, admittedly, what we had in the Darden case was name calling. What we have here, I think, is admittedly more subtle but also, I think, more insidious. I mean, the entire, you know, there was no dispute that Mr. Sutton was present at the scene of the homicide. What was at issue? And that he was with the two shooters, the two killers. Well, what's the Supreme Court case that the state court applied unreasonably or the decision was contrary to? Well, the state court didn't apply any Supreme Court cases. The state court didn't cite to any federal authority whatsoever. What they got wrong was the principle, you know, the due process principle, that the fundamental right to a fair trial was violated by the comments made by the prosecutor. Well, I guess, how can you cite a Supreme Court case if there isn't one? That, you know, I mean, what Judge Coote is saying, you need a Supreme Court case to sort of prevail under the AEDPA lens. But if there isn't one, then you take it the other way and say, well, the lower court didn't cite a Supreme Court case. So I think that's how your argument, as I understand it, is that you're asking for a heightened review because it really wasn't a meaningful review. That's one of my arguments. I believe we prevail under either argument. I do think there are Supreme Court cases. I think Berger and Darden are the controlling Supreme Court cases. But they're controlling for the general principle of misconduct violating due process. I think, you know, there are certain types of legal claims, ineffective assistance of counsel is one, prosecutorial misconduct is another, that are necessarily very fact specific. And you have to apply the general principles that have been announced in the U.S. Supreme Court. So why is your case worse than Darden, then? I think it's worse than Darden not in terms of the actual content of the statements that were made. Obviously, if you call a defendant an animal, that's a pretty egregious statement. But I think in terms of the interplay between the comments that were made by the prosecutor and Mr. Sutton's defense and the facts at trial, I think make the comments in this case rise to the level of a due process violation. But we would have to say that it was unreasonable for the state court to deny your claim. And it's hard for me to see, in light of Darden, how it was unreasonable for the state court to say this doesn't arise to a due process violation. Well, obviously it's our position that it was unreasonable. And, again, I have to come back to you can't look at the comments without also looking at the overall evidence that was introduced at trial and also Mr. Sutton's defense. And Mr. Sutton's defense was essentially based on his credibility. And the prosecutor was allowed to argue, well, if you find him credible, then you not only have to let this man go, you have to let the two shooters who killed the victim go. And, oh, by the way, go home and hug your loved ones and be glad this didn't happen to you. And hopefully it won't be you next time. I mean, that's a pretty egregious – the two types of misconduct that occurred, the distortion of the burden of proof combined with the appeals to sympathy and prejudice, interplayed with one another in a way that was very egregious and extremely damaging to Sutton, who was the only defendant who testified and the only defendant who was found by the jury to not have a firearm in the case. Well, they obviously didn't – the sympathy didn't work to make them misapply the evidence. But do you want – do you want to save your minute and 20 seconds for rebuttal? I think I will do that. Okay, thank you. May it please the Court, my name is Paul Weiser. I'm an Assistant Attorney General appearing on behalf of Appellee Waddington in this matter. Mr. Sutton is not entitled to relief under 28 U.S. Code Section 2254D because the prosecutor's closing argument in this case just did not cross the due process line. The Washington court's properly denied relief and that court's decision is entitled to deference under Section 2254D and we request that the court affirm the district court's decision. But let me ask you a question about the state court decision. We have a Supreme – Washington Supreme Court's commissioner decision. We have a Washington Court of Appeals decision. Which is the last recent decision? Is it the commissioner's denial? Does that count as the state Supreme Court's decision? Yes, Your Honor, I believe it does. It's not – and since it's not a – like a postcard denial, it is a reasoned denial. I believe that it would be considered the last reasoned opinion. Although – Although it's a commissioner and not the Supreme Court itself, is there a Washington state case on that point? There's more than that, Your Honor. There's a court rule, a rule of administration within Washington courts that the Supreme Court commissioner is authorized to speak on behalf of the court and rule on motions such as this, such as a motion for discretionary review, which is what Mr. Sutton had brought to the court. So there is a case on that. And I know that in this court in the Lambert v. Blodgett case several years ago took up that very point, which one is the last reasoned decision of the state courts, because there was a similar situation. I think the acting chief judge of the Court of Appeals had denied the personal restraint petition. So did the Supreme Court commissioner on a motion for discretionary review. And I think ultimately the court said it doesn't really matter because the commissioner's decision sort of incorporates the lower court decision. So the reasoning that we're going by may be the Court of Appeals' decision, but the last reasoned opinion is the commissioner's decision. Okay, thank you. Let me ask you this. How do you distinguish this case from Crack v. Spalding, where it's a Ninth Circuit case, where we held that a prisoner was entitled to habeas relief when the information failed to allege two of the essential elements of the underlying predicate offense for a felony murder? I believe that was a 1983 case, however. The biggest distinction, Your Honor, obviously the most important one is the fact that that was a pre-AEDPA case. And the Washington courts acknowledged that the decision was out there, but concluded that they were not bound to follow Crack v. Spalding. And the Sixth Amendment requires only that the defendant have notice of the charge against him. There simply is no clearly established federal law as determined by the Supreme Court holding that a felony murder information must contain the constituent elements of the predicate crimes. And here Mr. Sutton received constitutionally sufficient notice of the charge against him. The information stated that he was charged with first-degree felony murder, stated what the predicate offenses were. The probable cause certificate that was filed at the same time as the information, set forth the prosecutor's theory, including their legal theory. And Mr. Sutton was never actually charged with those underlying crimes, the attempted first-degree kidnap, attempted second-degree kidnap, and the burglary in the first degree. He was not actually charged with those offenses, so the information didn't have to include the elements of those offenses. And Mr. Sutton has never explained why that would have been necessary. This has been a strictly formal claim that he has made, challenging the information in his case. He never complained at any time, at the time of trial, that he was confused about what the prosecutor's case was or that he was unable to formulate a defense of any kind. And we know that defense counsel did not file a motion for a bill of particulars as he would have been allowed under Washington Superior Court Criminal Rule 2.1. There simply was no prejudice in this case. And I would point out that if this had been a federal prosecution and Mr. Sutton were bringing this challenge for the first time on appeal, it would be subject to the plain error standard of review under Rule 52. And he would have to show actual prejudice from whatever the error was at the trial court level. There simply was no ambush in this case, akin to the one that this court found in Shepard v. Reese in 1990. In that case, the defendant was tried on an open murder charge. The case was tried completely all the way through on a premeditation theory. And the very first time that the defendant heard about a felony murder theory was after closing arguments and during the jury instructions. And that was clearly an ambush in that case, and nothing of the sort happened in this case. And Creck v. Spalding just is not clearly established federal law for purposes of deciding Mr. Sutton's claim. We believe the state courts correctly concluded that there was no Sixth Amendment violation and that Mr. Sutton's claim was properly denied. Returning to the prosecutorial misconduct claim, as the court has already noted, the standard that applies to Mr. Sutton's claim is the Darden v. Wainwright due process standard, and that's a very general standard. Although it's more specific than the standard he appears to be relying on, which is the Berger v. United States standard. But the Darden v. Wainwright standard allows for the grant of a relief only if the prosecutor's argument rendered the entire trial unfair. And we just believe that that did not happen in this case. We know that under Section 2254d, the more general the rule is, the applicable rule that the Supreme Court has laid down, the more leeway the state courts get in applying that rule on a case-by-case basis. The prosecutor in Mr. Sutton's case didn't say, vindicate the does or send a message to the public or convict Mr. Sutton despite a lack of evidence. His argument just pointed out that, first of all, Mr. Sutton's sanitized and sunny version of the facts, in other words, that he was paying a social visit to the Doe home at 11.30 at night and suddenly had to react in self-defense to the provocation by Mr. Vu, that was completely incompatible with the version of events that the Does had testified to. In other words, that this was a home invasion followed by a kidnapping attempt and then by gunshots to Mr. Vu, who was unarmed. Mr. Sutton is entitled to a presumption of innocence, and he was entitled to a presumption of innocence at trial. He's not entitled to a presumption of credibility. When he took the stand and testified and he gave a version of events that was completely at odds with the testimony of the Does, he's asking for it. He's asking to have the jury look at that and at the stark contrast between the two versions of events. There's nothing insidious about that. That's fair comment on the evidence. What about, I think counsel for the appellant points out that the prosecutor does say, much like the Does, everything has been taken from them, they're never going to be the same, they will never be able to return to their net of safety, but then looks at the jury, but you have an opportunity today to do justice, that sort of linking. It's true, the prosecutor doesn't say, we'll just make up evidence and convict him, but everything's been taken away from them. They cannot be restored to a pre-crime state, but at least you can do justice, at least you can give them that peace of mind. That would be probably the most emotional part of any of it, because obviously the defendant's sitting there, Mr. Boo doesn't get to sit there because Mr. Boo's dead, and so the prosecutor is clearly evoking an image of what this family has gone through, the trauma, and that their lives will never be the same. Yes, Your Honor, and I believe the jury got a full dose of that during their testimony too, and in fact Mr. Doe, the father of Linda Doe, or Karen Doe rather, broke down on the stand because he felt he had failed to protect his family. This was obviously a very traumatizing event for every member of that family. Well, yeah, he's headshot in front of his whole family, right? Correct, actually two headshots as well as, I think, three body shots before that, and this was an event that happened late at night with the presence of a small child in the house. So it was a very traumatizing event. Would I have preferred that the prosecutor not use those particular terms or have it follow the playing of the tape, the replaying of the tape during the closing argument? Perhaps, it would have made it a lot easier to defend. But again, this was not a church picnic. This was a murder trial. This was a jury who had been sitting in this courtroom for two weeks, had heard two weeks' worth of testimony, and at that point I think they had heard over an hour worth of argument from the prosecutor. They would hear another hour or more worth of argument from the three defense attorneys and then rebuttal argument from the other prosecutor. What do you make of the statements that the prosecutor said, Hey, nothing I say is evidence. You can't decide this case based on sympathy. Does that bring any shelter in this case? I think it does, Your Honor, because the court has to consider the context in which the statements are made, and when the prosecutor has been careful to advise the jury that whatever he says is not evidence,  with their version of the evidence, they're to go with what their memory is and not his version, just because he's the attorney in the case. I know that the court also gave the jurors an instruction at the beginning of their instructions. It was instruction number one, which, among other things, said that the attorneys' remarks are not evidence, and we know that jurors are presumed to follow that. I think it's just simply silly to assume that at the conclusion of the argument, the jurors who would otherwise have obeyed their oath and made their decision solely on the evidence suddenly abandoned their oaths because the prosecutor made a three- or four-sentence plea to their sympathies. I think I've taken you over in your time, so I think we have your arguments well in mind. Thank you for your argument. Thank you, Your Honor. In the very little time that I have left, I just want to make two very quick points, and maybe I won't even use the whole minute and 15 seconds. The argument that the prosecutor's closing was an hour long and therefore misconduct or claimed misconduct that may have occurred doesn't really matter because it was only a few paragraphs is a red herring, and it's an argument that I hear a lot in state court on direct appeal and in proceedings like this. Well, except for he does make the point. These are not pretty facts, and there's nothing. The jury is entitled to hear the evidence in the jury, and so how much really more does it – I mean, you don't have to be a rocket scientist to – no one would have to say anything to you to realize that it would be traumatic to watch someone in your family be shot in the head right in front of you at night. So, I mean, really, what could that statement matter in the big picture? They heard evidence. They saw the actual people. They saw the breakdown. They saw the mother – I don't know, I guess sort of the common law of the – Well, what makes it so egregious is that that image is connected with the juror's own safety and security, and the point is made essentially if you find Mr. Sutton credible, then you must let all three defendants go, and oh, by the way, they'll be back in the community, and then your own sense of safety and security could be jeopardized and just, you know, thank God it hasn't been thus far. That's egregious misconduct. All right. Thank you for your argument. This matter will stand submitted. All right. Samir Kharaoui v. United States of America, case number 0935229, has been submitted on the briefs, will be submitted as of this date.
judges: Canby, Callahan, Ikuta